Argued September 15, 1964, reversed and remanded
February 3, 1965

# COX *v.* AL PEIRCE LUMBER COMPANY

398 P. 2d 746

*John Foss,* Coos Bay, argued the cause for appellant. With him on the briefs were McKeown, Newhouse & Johansen, Coos Bay.

*Philip A. Levin,* Portland, argued the cause for respondent. With him on the brief were Pozzi, Levin & Wilson, Portland.

Before McALLISTER, Chief Justice, and SLOAN, O'CONNELL, DENECKE and LUSK, Justices.

DENECKE, J.

Plaintiff log truck driver was injured by a rolling log while he was assisting in the piggy-backing of another driver's trailer. He recovered a verdict against defendant log dump operator, who appeals.

Dean, the other driver, drove his truck into unloading position ahead of plaintiff Cox. Defendant's machine pushed the logs off of Dean's truck. Three of the logs rolled back in a pile against Dean's truck wheel and close to his trailer. It was customary for drivers to assist one another in preparing an unloaded trailer for piggy-backing. Cox stepped in between Dean's truck and trailer, near the piled logs, to so assist. A log rolled from the pile and broke Cox's leg.

Defendant contends its motion for directed verdict should have been granted because plaintiff was contributorily negligent as a matter of law. Defendant's thesis is that Cox knew of the pile of logs, he appreciated the hazard, and he voluntarily took a position near the hazard which caused him to be injured.

*Bockman v. Mitchell Bros. Truck Lines,* 213 Or 88, 96, 320 P2d 266, 69 ALR2d 152 (1958), sets out these three criteria.

Superimposed upon the first two of the above criteria, or perhaps more specifically covering the same ground, is the issue,—what is the likelihood of harm created by the presence, in this case, of the pile of logs or, was the risk reasonable? See *Conway v. O'Brien,* 111 F2d 611, 612 (2d Cir 1940), opinion by L. Hand, J.

The pile of logs did create a hazard. The question is whether it created such a likelihood of harm that plaintiff's placing himself in the area of hazard was so patently dangerous that the question of whether he acted as a reasonable man cannot be left to the jury.

In *Bockman v. Mitchell Bros. Truck Lines,* supra, and *Jamerson, Adm'x v. Witt, Executrix,* 215 Or 227, 332 P2d 1054 (1959), plaintiff or his decedent was injured or killed by contact with wires known to be energized and uninsulated. In *Young v. Prouty Lumber Co.,* 81 Or 318, 159 P 565 (1916), plaintiff was injured by a plank which he knew would be thrown in his direction. In these three cases we held there was contributory negligence as a matter of law.

In *Pritchard v. Terrill,* 189 Or 662, 222 P2d 652, 25 ALR2d 358 (1950), and *Schenk v. Lamp,* 229 Or 72, 365 P2d 1068 (1961), plaintiff was injured by a step known to be faulty. In *Ritter v. Beals,* 225 Or 504, 358 P2d 1080 (1961), a cause of the injury was a steep ramp known to be hazardous. In *Birks v. East Side Transfer Co.,* 194 Or 7, 241 P2d 120 (1952), plaintiff adopted the hazardous course of trying to drive through a narrow opening between two obstacles on

the street. In these four cases we held contributory negligence was a jury question.

Plaintiff described the pile of logs thusly: "They looked just like they generally do, kind of shaky." The pile of logs had remained motionless for at least a minute after any movement of the loader, truck or trailer, and before plaintiff stepped near the pile. The logs in the pile were not large; the one which rolled on plaintiff was 12 to 14 inches in diameter at the end. No movement that would affect the logs occurred or was contemplated. The cause of the log's rolling is unknown.

■ Under these circumstances we hold the trial court properly left the issue of contributory negligence to the jury. We believe it a fact question to determine whether a reasonable man would know that this pile of logs created such a likelihood of harm, such an unreasonable risk, that he would not come within the ambit of its possible hazard.

Defendant also assigns as error the trial court's refusal to withdraw from the jury's consideration the following specification of negligence: "[I]n failing to use the Pettibone machine which was available for use, for which the logs could have been removed from the truck and into the clear so that they would not roll." The testimony was that defendant used a fork lift truck, referred to as a "stacker," to remove the logs. Plaintiff does not charge in his complaint that defendant was negligent in using a stacker, or that the stacker was negligently operated.

Dean requested defendant's employee to use the Pettibone machine which was available for use. The employee answered that he was not too familiar with the Pettibone and preferred to use the stacker.

The testimony was that the Pettibone machine was superior to the stacker in two respects: (1) it had more power and, therefore, could shove the logs farther off the truck where they were less likely to roll back against the wheels; and (2) the forks on the Pettibone could be moved vertically and horizontally and, therefore, if logs fell against the wheels, "he could put the forks down and lift them up and slip them away from your wheels." The stacker also could move logs which rolled back against the wheels but to do so had to move from the side of the truck to the front or rear.

■ This action was not brought under the Oregon Employers' Liability Act, which requires an employer to use "every device, care and precaution which it is practicable to use * * *." ORS 654.305. Plaintiff agrees that defendant's duty was only to furnish a machine that was reasonably safe.

> "* * * If the appliances furnished or the method adopted by the master is reasonably safe and suitable for the purpose intended, he is not liable for a failure to furnish or adopt others believed by some to be less perilous: [Citing cases]. * * *" *Blust v. Pacific Telephone Co.*, 48 Or 34, 37, 84 P 847 (1906). Accord, *Freeman v. Wentworth & Irwin, Inc.*, 139 Or 1, 7 P2d 796 (1932).

The issue, therefore, is whether the stacker was reasonably safe to use.

■ The submission of the charge of negligence regarding the Pettibone machine is correct if it necessarily raises the issue of whether the use of the stacker is negligence; if it does not do so, it is error.

The court read to the jury from the complaint that plaintiff charged defendant with being negligent in failing to use the Pettibone machine, etc. The court

defined negligence. No other instructions were given relevant to this charge of negligence.

Complaints frequently charge negligence in terms of omission, that is, a failure to do something. For example, a common charge in a traffic accident action is that defendant was negligent, "in failing to keep his vehicle under control." In such a situation there are only two choices: keeping one's vehicle under control, which is not negligent conduct, and not keeping one's vehicle under control, which is negligent conduct.

In this action, use of the Pettibone machine, we assume, would not be negligent conduct; but it does not necessarily follow that use of the stacker is negligent conduct. Use of the stacker was not negligence as a matter of law and plaintiff does not so contend.

Plaintiff contends that he had a right to introduce evidence to show the various ways that could have been used to make the operation safe: use of brow log, more space, use of the Pettibone machine. This contention would support the introduction of such evidence, but it does not provide any basis for the submission to the jury of the charge that defendant was negligent in failing to use the Pettibone machine.

The jury could have found that a reasonably prudent log dump operator would have used a Pettibone machine. Such a finding, under the instructions, would cause the jury to find for plaintiff. However, such a finding does not necessarily mean that the jury could not also have found that a reasonably prudent log dump operator would have used a stacker because a stacker was also reasonably safe. This latter is the proper issue.

The submission of the specification of negligence of failing to use the Pettibone machine, in effect, in-

structed the jury that it could find for plaintiff, even if defendant had not breached the duty it owed plaintiff of using a reasonably safe machine. This submission was error. There was a substantial amount of evidence that the Pettibone machine was superior to the stacker. The jury could have based its verdict upon a finding of superiority; therefore, the error requires reversal.

Reversed and remanded.